UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT OF TEXAS

DAVID NEELY,                            §
                                        §
                 Plaintiff,             §
versus                                  §                CIVIL ACTION H-05-2408
                                        §
                                        §
HOUSTON COMMUNITY COLLEGE               §
SYSTEM, et al.,                         §
                                        §
                 Defendants.            §

## Opinion on Summary Judgment

1.      *Introduction.*

        A former community college instructor sued the college and the transportation
authority that sponsored the program in which he taught when the college refused to give
him a new contract.  The college says that it had valid reasons for its decision, and the
bus line denies that it is liable to him.  They are right and will prevail.

2.      *Background.*

        David Neely taught diesel mechanics to employees of the Metropolitan Transit
Authority on behalf of Houston Community College.  He worked for the college from
November 1982 until August 2003 under a series of 12-month contracts.

        In July 2003, the college advised him that the contract for the upcoming academic
year would be for a nine-month term.  A month later, it offered him a three-month
extension through August 31, 2004.  He accepted.

        On August 5, 2004, the college informed him that he would get no contract for
2004-2005.  At his request, it held a three-day grievance hearing in October.  Neely was
represented by an attorney of his choice.  The mediator affirmed the college's decision.

        Claiming that he was employed in a dual capacity by both the college and Metro,
Neely sued them for defamation, age discrimination, hostile work environment,
harassment, wrongful discharge, and breach of contract.  He orally dismissed with
prejudice of his claims for hostile work environment and harassment against the college.
On his consent and Metro's motion, the court dismissed with prejudice all claims against
Metro except for wrongful discharge and breach of contract.

3.      *Houston Community College.*

Neely left his diesel mechanics class unattended on July 1, 2003, to grade tests at a facility at a different location.  He gave his students a quiz and left his son, who was not employed by either Metro or the college, in charge.

He was late and often absent.  After Metro representatives complained to his supervisor at the college – George Washington – Washington and Neely's Metro supervisor counseled him.  He continued to miss class, and Washington complained to his own supervisors, including Kenneth Hernandez, the dean of the workforce development program.

On August 26, 2003, Neely's supervisors at the college counseled him about his performance again.  On September 3, Hernandez told human resources that Metro was investigating Neely and he was reassigning Neely.  On the same day, Warren Field of Metro asked the college to remove Neely from the program even though Field's boss did not want Neely fired.  Field claimed that Neely had been unprepared for class and uncooperative with the Metro staff over the past five years.  He also said that Neely missed work, was often hours late for class even after his schedule was adjusted at his request,  and failed to keep training records.

At the direction of Hernandez, Washington gave Neely a written reprimand on September 30 for the July 1 incident, warning him that he could be suspended or fired if he did it again.  Neely admitted that he left his class unattended, but he protested that other instructors who left their classes to go to the break room, restroom, or tool room were not punished.

On November 4, 2003, Hernandez moved him from the Metro program into an evening course, but Neely refused to teach it.  On December 15, Hernandez recommended firing him for insubordination and neglect of his duties.  He was not fired, and he returned to work two months later in January 2004.

In May 2004, Neely tried to enroll his son, Christopher, at two campuses, but they were rejected because the deadline had passed and Christopher was not a Texas resident.  He then convinced someone on a third campus to allow him to register his other son, Justin, two and a half weeks late without seeing his driver's license.  Neely signed an employee waiver of tuition for Justin.  The son who he called Justin at the third campus was really Christopher.

Christopher attended the course.  When questioned, he told the instructor that he was Justin.  The instructor contacted campus security, and the son admitted that he

was Christopher.  A representative of the college questioned Neely, who continued to insist that Justin, not Christopher, was in the class.

In July 2004, Neely's students reported that he was not in class, and a campus security officer found him at another part of campus repairing one of his personal vehicles with both of his sons.  When the officer returned with a faculty member, Neely had returned to his class, and the sons argued that he had authorized their work.

On August 2, 2004, Hernandez sent the president, chancellor, and human resources department a confidential memorandum asking them not to renew Neely's contract for 2004-2005.  He cited his absences from the classroom and falsified registration for his son.  The college did not renew it.

A.      *Age Discrimination*.

Neely was 61 when the college fired him.  He says that Washington and Van O'Neal, the Assistant Dean of Workforce Development, asked him about his retirement plans and only disciplined him because he refused to retire.  Casual inquiries about the retirement plans of a 61-year-old instructor are not discriminatory; Neely has no other evidence of age discrimination by Washington and O'Neal.

Hernandez – not Washington or O'Neal – made the decision to not renew the contract.  Neely has no evidence that Hernandez inquired about his retirement.  Even if he had, asking about it is not evidence of discrimination.

Further, Neely is only about five years older than Hernandez and Washington, and three years older than O'Neal.  Declining to renew the contract of a troublesome employee who refused to do his job and faked his son's tuition waiver application has nothing to do with the employee's age.

B.      *Wrongful Termination and Breach of Contract*.

Neely's complaint is the same – procedurally and substantively – under both theories.  He says that the college had no right to "fire" him because he had tenure.

The college gave him his first 12-month contract in 1982. Including Neely, no faculty member since 1979 has been given a tenured contract.  When his last contract ended, the college owed him no further employment.  He had no contract with the college for it to breach.

It is undisputed that he had sporadic attendance; left class more than once for an extended time for personal matters; allowed his son to supervise his class in his absence; and refused to teach for two months.  He has no evidence to show that the college has an obligation to give him a new contract.

- 3 -

C.     *Defamation*.

In a confidential memorandum to the president, chancellor, and human resources, Hernandez told them that "we have evidence that [Neely] has falsified HCC records including employment and student enrollment."  Neely calls this libel.

To establish defamation, he must show that the college intentionally or negligently published a false and defamatory statement about him to a third-party  that caused him special harm.  He cannot; the information in the memorandum was true.

Even if it were false, Hernandez did not publish it to a third party.  Texas recognizes a qualified privilege for accusations about an employee by an employer made to a person who has an interest in the matter to which the communication relates.  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995); *Houston v. Grocers Supply Co., Inc.*, 625 S.W.2d 798, 800 (Tex. App. – Houston 1981).  Hernandez rightfully shared the information with his superiors.

4.     *Metropolitan Transit Authority*.

From October 1997 to October 2003, Neely worked for both Metro and the college.  He claims that he was wrongfully discharged from Metro after he angered his Metro supervisor in June 2003 by exposing a "budgetary discrepancy."  His personnel records from Metro show, however, that he voluntarily resigned and remained eligible for re-hire – he was not "removed."  Further, he told nobody other than the supervisor and his peers about the discrepancy until he filed this lawsuit over two years later.

He did not work for Metro on August 5, 2004, when the college refused to give him a contract for 2004-2005.  Not only had he resigned from Metro 11 months earlier, he had already been removed from the college's Metro program 10 months earlier.

He also says that he refused to work on another Metro supervisor's personal vehicle, and the supervisor – Warren Field – retaliated by demanding that the college remove him.  The college did not Neely; it declined to renew his contract.  Although the college used information from Field to make its decision, neither Field nor Metro made the decision for the college.  Metro has no liability to Neely for the college's decision.

Not surprisingly, Metro discontinued the apprenticeship training program at the college in 2005.

5.     *Conclusion*.

Neely was a contract employee whose contract with the college was not renewed. He has no right to a new contract with the college or damages for libel for the privileged

communications within the college.  Since he did not work for Metro, he could not have been wrongfully discharged from it, and it could not have breached a non-existent employment contract.

Signed August 14, 2006, at Houston, Texas.


_____
Lynn N. Hughes
United States District Judge